UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK SPOTZ,<br><br>                    Plaintiff,<br><br>     v.<br><br>JOHN E. WETZEL, et al.,<br><br>                    Defendants. | CIVIL ACTION NO. 1:21-CV-01799<br><br>(CONNER, J.)<br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

Presently before the Court is *pro se* Plaintiff Mark Spotz ("Spotz")'s motion to appoint counsel, Spotz's motion to compel, Defendants John E. Wetzel ("Wetzel") and Pennsylvania Department of Corrections ("DOC") (collectively, the "Defendants")'s motion to stay discovery, and Defendants' second motion for extension of time to respond to the complaint. (Doc. 14; Doc. 18; Doc. 20; Doc. 23). Spotz initiated this civil rights action pursuant to 42 U.S.C. § 1983 by filing a complaint on October 21, 2021, alleging violations of his rights under the Eighth and Fourteenth Amendments, as well as the Americans with Disabilities Act ("ADA"). (Doc. 1). At all times relevant to this action, Spotz is an inmate at the State Correctional Institution at Phoenix, Pennsylvania ("SCI-Phoenix"). (Doc. 18, at 1). For the following reasons, Spotz's motions (Doc. 14; Doc. 23) shall be DENIED, and Defendants' motions (Doc. 18; Doc. 20) shall be GRANTED.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

On October 21, 2021, Spotz initiated this civil rights action by filing a complaint against Defendants for violations of Title II of the ADA, Section 504 of the Rehabilitation Act, and the Eighth and Fourteenth Amendments. (Doc. 1, at 1). On November 10, 2021,

Spotz filed a motion to proceed *in forma pauperis*, which the Court granted on the same day. (Doc. 6; Doc. 8). In the complaint, Spotz asserts that he has been in solitary confinement "without rationale," beginning in 1995, under harsh conditions that were detrimental to Spotz's physical and psychological health., until December 3, 2019, when the DOC implemented a new policy that addressed the harsh conditions of the Capital Case Unit ("CCU"). (Doc. 1, at 3-4). As relief, Spotz requests a declaration that Defendants' conduct violated Spotz's rights, monetary, compensatory, and punitive damages, and attorney's fees. (Doc. 1, at 7).

On December 27, Spotz filed the motion to appoint counsel. (Doc. 14). On January 4, 2022, Defendants filed the first motion for extension of time to answer the complaint, which the Court granted on January 5, 2022. (Doc. 15; Doc. 16; Doc. 17). On January 12, 2022, Defendants filed a motion to stay discovery pending the resolution of a request to consolidate related cases and the disposition of forthcoming dispositive motions. (Doc. 18). On January 24, 2022, Defendants filed a second motion for an extension of time to respond to the complaint.[1] (Doc. 20). On January 31, 2022, Spotz filed a motion to compel. (Doc. 23). The motions are fully briefed and ripe for disposition. (Doc. 14; Doc. 18; Doc. 19; Doc. 21; Doc. 22; Doc. 23; Doc. 24; Doc. 25; Doc. 29).

---

[1] In the second motion for extension of time, Defendants "request an additional extension of time to avoid expending public resources and occupying this Court's time with a response, given that it is possible the action will be consolidated with other related actions, and one consolidated response could be filed as to all pending actions." (Doc. 20, at 3). For the reasons contained in this Memorandum, the Court will stay discovery, and Defendants' obligation to respond to Spotz's complaint will be extended pending resolution of Defendants' efforts to consolidate and transfer related cases. Accordingly, Defendants' second motion for an extension of time will be GRANTED. (Doc. 20).

II.     **MOTION TO APPOINT COUNSEL**

In Spotz's motion to appoint counsel, Spotz avers that he is unable to afford counsel, that the case involves factual complexities involving proper understanding/interpretation of law that will require support from legal counsel, and that he is confined in a housing unit with access to an "inadequate 'mini' library." (Doc. 14, at 1). In addition, Spotz asserts that his mental illnesses and disabilities constitute "special circumstances" warranting the appointment of counsel, and that he has attempted to secure counsel to no avail. (Doc. 14, at 4-5).

Although prisoners have no constitutional or statutory right to appointment of counsel in a civil case, the Court "may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(e)(1); *see Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). Under 28 U.S.C. § 1915(e)(1), "district courts [have] broad discretion to determine whether appointment of counsel is warranted, and the determination must be made on a case-by-case basis." *Tabron*, 6 F.3d at 157-58.

Appointment of counsel for an indigent litigant should be made when circumstances indicate "the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984). The initial determination to be made by the court in evaluating the expenditure of the "precious commodity" of volunteer counsel is whether the plaintiff's case has some arguable merit in fact and law. *Montgomery*, 294 F.3d at 499. If a plaintiff overcomes this threshold

hurdle, other factors to be examined are:

> (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the claimant to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her own behalf; (5) the extent to which the case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses.

*Montgomery*, 294 F.3d at 499 (citing *Tabron*, 6 F.3d at 155-57).

Additionally, another practical consideration must be taken into account when considering a motion for appointment of counsel. As the Third Circuit has observed:

> [W]e must take note of the significant practical restraints on the district courts' ability to appoint counsel: the ever-growing number of prisoner civil rights actions filed each year in the federal courts; the lack of funding to pay appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation. We have no doubt that there are many cases in which district courts seek to appoint counsel but there is simply none willing to accept appointment. It is difficult to fault a district court that denies a request for appointment under such circumstances.

*Tabron*, 6 F.3d at 157.

Here, Spotz seeks appointment of counsel based on his mental disabilities and confinement in a prison housing unit with limited access to legal research materials. (Doc. 14, at 1-5). On the record presently before the Court, application of the *Tabron* factors weighs in favor of denying Spotz's application for appointment of counsel at this time. *See Tabron*, 6 F.3d at 155-57. Spotz's complaint contains clearly set forth allegations of violations of his Eighth and Fourteenth Amendments, as well as the ADA. (Doc. 1, at 6-17). There is no indication that Spotz is unable to present his case, the legal issues do not appear to be particularly difficult or complex, and Spotz's ability to communicate effectively is demonstrated by his various filings. Defendants have also yet to respond to the complaint, either challenging the legal basis of the complaint or filing an answer. It is not until these

matters are resolved will the Court be able to examine the threshold question of arguable facts and legal merit of Spotz's claims for the purpose of appointing counsel.

Having reviewed the complaint and considered the nature of the factual and legal issues involved, as well as Spotz's ability to present his claims, there is no evidence, at this point, that any prejudice will result in the absence of counsel. Consequently, the appointment of counsel is not warranted at this time. Accordingly, Spotz's motion to appoint counsel will be DENIED. (Doc. 14).

### III.   MOTION TO COMPEL

Spotz seeks to compel Defendants to serve all correspondence intended for Spotz directly at SCI-Phoenix. (Doc. 23, at 2). Specifically, Spotz asserts that Defendants violated Department of Corrections ("DOC") policy DC-ADM 803, Inmate Mail and Incoming Publications, because he has been served filings in this action through the DOC's mail processing center. (Doc. 23, at 1-2; Doc. 29, at 2-3). In response, Defendants assert that communications between Defendants and Spotz is not privileged so any correspondence, including service of filings, must be accomplished in accordance with DC-ADM 803, Section 1(C) through the DOC's mail processing facility. (Doc. 24, at 4-5). Spotz does not plead the specifics of this DOC mail policy, but the Court takes judicial notice of this policy as a matter of public record. *Leonhauser v. Long*, No. 11-241, 2012 WL 398642, at *3 n.2 (M.D. Pa. Jan. 4, 2012) (taking judicial notice of DOC policy).

The DC-ADM 803 effective October 3, 2018 ("2018 DC-ADM 803") provided that non-privileged correspondence to an inmate was to be addressed and sent to Smart Communications, the Department's contracted mail processing center in Florida, whereas incoming privileged correspondence was to be sent where the inmate was housed. (Doc. 24-

1, at 6). Incoming privileged correspondence was defined as: (1) mail from an inmate's attorney that was hand-delivered to a facility or identified with a control number, (2) mail from a court, and (3) mail from an elected or appointed federal, state, or local official who had sought and obtained a control number. (Doc. 24-1, at 43). The policy explicitly noted that "[n]ot all correspondence between an inmate and elected or appointed federal, state, or local official will require privileged correspondence processing. Control numbers will only be issued when the underlying matter involves matters related to a confidential investigation process or similar concerns." (Doc. 24-1, at 43). For non-privileged correspondence, Smart Communications had to open and scan the mail and electronically transmit scanned copies to prison facility staff. (Doc. 24-1, at 13-14). Prison facility staff were to print paper copies of incoming non-privileged correspondence and deliver the copies to inmate recipients. (Doc. 24-1, at 14). Smart Communications was to securely maintain original incoming correspondence and scanned electronic copies for 45 days and then destroy the original and electronic copies. (Doc. 24-1, at 14).

The DOC procedure for handling incoming privileged correspondence was as follows: (1) mail was to be opened and inspected for contraband in the inmate's presence; (2) mail was to be photocopied in the inmate's presence; (3) photocopies of the contents of mail were to be delivered to the inmate; (4) mail was to be noted on a legal mail log, which the inmate was to sign; (5) original mail was to be sealed in an opaque envelope secured with evidence tape in the inmate's presence; (6) the sealed envelope containing the original mail was to be deposited into a locked and secured receptacle provided by a vendor; (7) only the vendor was to be able to unlock or access the receptacle; (8) the activity of DOC staff and the inmate during this process were to be video recorded, but the contents of the mail was not to be recorded; (9) the

vendor was to securely maintain the original mail and video recording for 45 days and then securely destroy the original mail and video recording; and (10) before the mail's destruction, an inmate could make a request to access the original mail, in accordance with this process, or to preserve the mail from destruction pursuant to a grievance. (Doc. 24-1, at 17-18).

Spotz asserts that his mail from Defendants was sent through Smart Communications, which did not open the mail in Spotz's presence and stored the original mail. (Doc. 23, at 1-2). Sports submits that Defendants must serve him filings directly because correspondence from Defendants is privileged as it is legal in nature and may contain privileged medical/psychiatric records. (Doc. 29, at 2). Defendants oppose the motion, explaining that Spotz "is mistaken about both the requirements of DC-ADM 803 and the nature of the relationship between himself and counsel for the Defendants." (Doc. 24, at 4).

According to DC-ADM 803, correspondence between Spotz and counsel for Defendants is not privileged. (Doc. 24, at 4). The correspondence, including service of filings, does not satisfy the policy's definition for "privileged" material because it is not: (1) mail from Spotz's attorney that was hand-delivered to a facility or identified with a control number; (2) mail from a court; or (3) mail from an elected or appointed federal, state, or local official who had sought and obtained a control number. (Doc. 24-1, at 43). Thus, communications between Spotz and counsel for Defendants, including service of filings, fall within the category of "non-privileged correspondence." DC-ADM 803 mandates that such non-privileged correspondence must be addressed and sent to the DOC's mail processing facility, where the mail is opened, scanned, and electronically transmitted to prison facility staff. (Doc. 24-1, at 6, 13-14). Therefore, counsel for Defendants has not violated DC-ADM 803.

Accordingly, Spotz's motion to compel relating to the delivery of mail will be DENIED. (Doc. 23).

IV. **MOTION TO STAY**

In the motion to stay, Defendants request that the Court stay discovery in this matter until the issue of consolidating and transferring related cases is resolved, and any forthcoming motion to dismiss or other dispositive motion is decided. (Doc. 18, at 1). In opposition, Spotz argues that "[n]o 'good cause' and no 'reasonableness' has been offered for this Court's consumption that justify staying the discovery process nor outweighing the prejudice such would cause to [Spotz]." (Doc. 22, at 3; Doc. 25, at 1).

District courts have broad power to stay proceedings. *Bechtel Corp. v. Local 215, Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976). A district court's power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Bechtel*, 544 F.2d at 1215 (quoting *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)). In exercising its discretion, a district court can "hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel*, 544 F.2d at 1215. This is especially true where the other case is proceeding in another federal court. *See Miccosukee Tribe of Indians of Florida v. South Florida Water Mgmt. Dist.*, 559 F.3d 1191, 1196 (11th Cir. 2009) (holding appeals court lacked jurisdiction to hear appeal from stay where district court, *sua sponte*, stayed proceedings pending an appeal in another related federal case). The issues and the parties to the two causes need not be identical before one suit may be stayed to abide the proceedings of another. *See Landis*, 299 U.S. at 254. However, a district court would abuse its discretion by issuing a stay "of indefinite duration in the absence of a

pressing need." Landis, 299 U.S. at 255. A district court must exercise its judgment in weighing the competing interests and maintaining an even balance when staying a proceeding. Cheyney State College Faculty v. Hufstedler, 703 F.2d 732, 737–38 (3d Cir. 1983).

However, "[a] stay is an extraordinary measure." United States v. Breyer, 41 F.3d 884, 893 (3d Cir. 1994). A court's decision whether to stay a proceeding may be guided by a consideration of the following factors:

> (1) the identity of the parties and issues in both actions; (2) the adequacy and extent of relief available in the alternative forum; (3) the likelihood of prompt disposition in the alternative forum; (4) the convenience to the parties, counsel, and witnesses; (5) the possibility of prejudice to the party as a result of the stay; and (6) the promotion of judicial efficiency.
>
> Locke v. Wetzel, No. 3:19-CV-0499, 2020 WL 5506435, at *2 (M.D. Pa. Sept. 11, 2020) (citing Balfour v. Gutstein, 547 F. Supp. 147, 148 (E.D. Pa. 1982)).

"The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Nken v. Holder, 556 U.S. 418, 433-34 (2009) (citations omitted). The moving party "must demonstrate a clear case of hardship or inequity, if there is even a fair possibility that the stay would work damage on another party." Gold v. Johns-Manville Sales Corp., 723 F.2d 1068, 1075-76 (3d Cir. 1983) (internal quotation and citation omitted). The Court's analysis "looks to the totality of the circumstances" and the "inquiry is largely case specific." InterMetro Indus. Corp. v. Enovate Med., LLC, No. 3:13-CV-02854, 2017 WL 901100, at *2 (M.D. Pa. Mar. 7, 2017) (citation omitted).

After weighing the enumerated competing interests, the Court finds that the balance tips toward exercising its power to stay discovery in this action. See InterMetro Indus. Corp., 2017 WL 901100, at *2. "[A] stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion 'appear[s] to have substantial grounds' or, stated another way, 'do[es] not appear to be without foundation in law.'" Yeh v. United States

*Bureau of Prisons,* No. 3:18-CV-943, 2019 WL 1330446, at *4 (M.D. Pa. Mar. 25, 2019) (quoting *Johnson v. New York Univ. School of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002)). In the motions to stay, Defendants request that the Court stay discovery in this matter until the issue of consolidating and transferring related cases is resolved, and any forthcoming motion to dismiss or other dispositive motion is decided. (Doc. 19, at 1). Explaining that several related cases are pending in the Eastern District of Pennsylvania, Defendants assert that "ongoing efforts to consolidate over two-dozen related cases could potentially and significantly alter the court and scope of discovery in these cases." (Doc. 19, at 1-3). Defendants aver that staying discovery in this individual matter until the pending motions to in related cases are resolved is prudent because (1) a stay "would promote the preservation of public resources by not forcing Defendants to engage in discovery in each separate matter;" and (2) "the outcome of those motions could materially alter the landscape of both the claims at issue and parties involved." (Doc. 19, at 2-3). In opposition, Spotz argues that the determination of whether to consolidate and transfer "related" cases in the Eastern District is not a dispositive pending motion that may dispose of Spotz's entire action. (Doc. 22, at 2-3). Nevertheless, the Court finds that a stay of discovery is appropriate because there are overlapping issues in related cases before the Eastern District, and the disposition motions in those related cases may directly impact this action.

In addition, Defendants, as the moving party, have met their burden of establishing that they will suffer a clear case of hardship or inequity in the absence of a stay. *See Gold*, 723 F.2d at 1075-76. The effect of a stay on discovery would not prevent Spotz from litigating his case because the resolution of dispositive motions in related cases may directly impact this action. Moreover, it is evident to the Court that the benefits of staying discovery are not

outweighed by any prejudice Spotz may suffer because once dispositive motions in related cases are resolved, the parties will proceed to litigate this case. Lastly, the Court finds that a stay on discovery would serve judicial economy and prevent unnecessary hardship upon Defendants.

Accordingly, Defendants' motion to stay discovery will be GRANTED. (Doc. 18).

V.    **CONCLUSION**

For the foregoing reasons, upon consideration of the patties' motions, Spotz's motion to appoint counsel (Doc. 14) and motion to compel (Doc. 23) are **DENIED**. In addition, Defendants' motion to stay discovery (Doc. 18) and second motion for an extension of time (Doc. 20) are **GRANTED**. Defendants are **DIRECTED** to file a status report as to the status of the related cases and the dispositive motions to consolidate and transfer in related cases on or before April 11, 2022.

An appropriate Order follows.

Dated: March 11, 2022                                           *s/ Karoline Mehalchick*
                                                                **KAROLINE MEHALCHICK**
                                                                **Chief United States Magistrate Judge**