# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARK SPOTZ,                    :      Civ. No. 1: 21-CV-1799
                              :
        Plaintiff,            :
                              :      (Judge Conner)
    v.                        :
                              :
JOHN E. WETZEL, et al.,       :      (Magistrate Judge Bloom)
                              :
      Defendants.             :

## REPORT AND RECOMMENDATION

## I.   Introduction

This case comes before us for consideration of a motion to dismiss or, in the alternative, for summary judgment, filed by the defendants. (Doc. 54). The plaintiff, Mark Spotz, an inmate incarcerated in the Pennsylvania Department of Corrections ("DOC"), alleges that he was held in solitary confinement by the DOC for 25 years pursuant to an active death sentence, despite having a known history of serious mental illness. (Doc. 40). Spotz claims his confinement violated the Eighth and Fourteenth Amendments of the United States Constitution, the Americans With Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). (*Id.* ¶¶ 102-28). The amended complaint names two defendants—the DOC and its former secretary, John Wetzel. (*Id.* ¶¶ 10-13).

The defendants have moved to dismiss the amended complaint or, in the alternative, for summary judgment. (Doc. 54). The motion is fully briefed and is ripe for resolution. (Docs. 54, 55, 61). After consideration, we recommend that the defendants' motion be granted in part and denied in part.

## II.   Background

In 1995, Spotz was sentenced to death and incarcerated in the DOC's Capital Case Unit ("CCU"). (Doc. 40 ¶¶ 9, 20, 66). While in custody, Spotz was diagnosed with a host of serious mental health disorders, including chronic severe posttraumatic stress disorder with dissociative symptoms, borderline personality disorder, obsessive compulsive disorder, mixed personality disorder with dependent schizotypal, borderline, and antisocial features, dependent personality disorder, attention deficit hyperactive disorder, polysubstance abuse disorder, and bipolar disorder. (*Id.* ¶ 14). The amended complaint alleges that DOC physicians remarked that Spotz's "mental and emotional deficits [we]re extremely serious and involve[d] debilitating mental, emotional and cognitive impairments" that "significantly impair[ed] [his] judgment." (*Id.*) (internal quotation marks omitted). Ultimately, the

DOC assigned Spotz a "stability code D" designation, which he alleges is "reserved for the most seriously mentally disabled" inmates. (*Id.* ¶ 19).

Though the defendants allegedly knew of Spotz's mental health conditions, they held him in solitary confinement between 1995 and 2019. (Doc. 40 ¶¶ 20, 71-96). During that time, Spotz remained "alone in a small cell that measured about seven by twelve feet, where he ate, slept, used the toilet, and spent almost all his waking hours." (*Id.* ¶ 29). His cell was always illuminated, which interfered with his sleep, and he was deprived of meaningful social interaction, including "physical contact with other human beings...." (*Id.* ¶¶ 30-32). Spotz was also prohibited from participating in congregate religious activities and any educational programming. (*Id.* ¶¶ 34-35).

Spotz remained in solitary confinement until December of 2019, when the DOC implemented a new policy for death-sentenced inmates pursuant to a settlement agreement in *Reid v. Wetzel*, 1:18-cv-00176 (M.D. Pa. 2018). (Doc. 40 ¶ 61). Though the DOC implemented interim policies beginning in the spring of 2018, Spotz continued experiencing many of the same deprivations imposed by the original policy. (*Id.* ¶ 64). For example, even after the interim policies were implemented, Spotz

alleges he still could not meaningfully interact with others, experience human touch, exercise, or participate in group activities, and still had to spend most of his time alone in his cell. (*Id.*). In fact, according to Spotz, he was not permitted to participate in educational, recreational, or religious programming until January of 2022. (*Id.* ¶ 63).

In solitary confinement, Spotz alleges that he suffered a host of physical and psychological injuries. (Doc. 40 ¶¶ 97-99). Specifically, Spotz claims he suffered severe headaches, blackouts, and pain in his joints, neck, back, and abdomen. (*Id.* ¶ 98). He also alleges that he experienced intrusive thoughts, oversensitivity to stimuli, irrational anger, irritability, difficulty remembering and concentrating, and suicidal ideation. (*Id.* ¶ 99).

Spotz alleges that the defendants knew—based on various studies, reports, and judicial decisions—that solitary confinement could cause serious psychological harm. (Doc. 40 ¶¶ 71-96). Spotz claims that these psychological studies show that solitary confinement, among other things, increases the risk of suicide and psychotic episodes, including auditory and visual hallucinations, and both causes and exacerbates mental illnesses, such as depression and anxiety. (*Id.* ¶¶ 73-76). These

negative effects are alleged to be especially pronounced for people like Spotz, who have preexisting mental illnesses. (*Id.* ¶ 80). Because of these psychological studies, the United States Department of Justice "(DOJ") issued a report in 2014, stating its finding that the Pennsylvania DOC had been violating the United States Constitution and the ADA by holding mentally ill prisoners in solitary confinement. (*Id.* ¶¶ 87-89). Similarly, in 2017, the American Civil Liberties Union sent a letter directly to Wetzel, urging him to stop automatically placing death-sentenced prisoners in permanent solitary confinement. (*Id.* ¶¶ 94-95). As the amended complaint notes, another court in this district has already found, after discovery, that "Wetzel 'knows well the risks inherent in prolonged isolation...[and has] stated he is familiar with the [scholarly literature] which sets forth at length the harmful effects of solitary confinement.'" (*Id.* ¶ 92) (quoting *Johnson v. Wetzel*, 209 F. Supp. 3d 776, 779 (M.D. Pa. 2016)).

Spotz filed this action on October 21, 2021, and filed the amended complaint on March 20, 2023. (Docs. 1, 40). The amended complaint names the DOC and Wetzel in both his individual and official capacities. (Doc. 40 ¶¶ 10-12). Spotz brings three claims under 42 U.S.C. § 1983—

unconstitutional conditions of confinement in violation of the Eighth Amendment, as well as denial of procedural and substantive due process in violation of the Fourteenth Amendment. (*Id.* ¶¶ 102-128). He also brings claims under the ADA and the RA. (*Id.*).

On May 19, 2023, the defendants moved to dismiss the amended complaint or, in the alternative, for summary judgment. (Doc. 54). In their motion, the defendants argue that the Court should dismiss the entire amended complaint because Spotz failed to exhaust his administrative remedies and to comply with the statute of limitations. (Doc. 55 at 2-3). Defendant Wetzel also seeks qualified immunity on the Eighth and Fourteenth Amendment claims against him in his individual capacity. (*Id.*). This motion is fully briefed and is ripe for resolution. (Docs. 54, 55, 61). After consideration, we recommend that the motion be granted in part and denied in part, as set forth below.

III. **Standards of Review**

    A. **Motion to Dismiss - Standard of Review**

Rule 12(b)(6) permits the court to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under federal pleading standards, a complaint must set

forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations in the complaint as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court is not required to accept legal conclusions or "a formulaic recitation of the elements of a cause of action." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

As the Third Circuit Court of Appeals has aptly summarized:

[A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*,

> "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Generally, when considering a motion to dismiss, a court relies on the complaint and its attached exhibits, as well as matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court can also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, if the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider such document in its determination. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on any other part of the record when deciding a motion to dismiss. *Jordan*, 20 F.3d at 1261.

8

### B. Motion for Summary Judgment – Standard of Review

Under Rule 56(a), a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of the facts will depend on the substantive law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under governing law" will preclude summary judgment. *Id.* A dispute is only genuine if a reasonable juror could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to "demonstrate the absence of a genuine issue of material fact," relying on pleadings, depositions, affidavits, and other evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant "successfully points to evidence of all of the facts needed to decide the case on the law," the nonmovant can still defeat summary judgment by pointing to evidence in the record which creates a genuine dispute of material fact and from which a jury could find in its favor. *El v. Southeastern Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007). However, "[i]f

the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). A court may not make credibility determinations or weigh the evidence, but "must view the facts in the light most favorable to the non-moving party." *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

## IV. Discussion

As we have noted, the defendants have moved to dismiss the amended complaint or, in the alternative, for summary judgment. (Doc. 54). As discussed below, we recommend that the motion be granted in part and denied in part as follows: the motion should be granted as to the § 1983 claims against the DOC and against Wetzel in his official capacity, the ADA and RA claims against Wetzel, and the Fourteenth Amendment claim against Wetzel; and the motion should be denied with respect to the ADA and RA claims against the DOC, as well as Spotz's Eighth Amendment claim against Wetzel.

### A. Spotz's Section 1983 Claims against the DOC and Wetzel in his Official Capacity are Barred by the Eleventh Amendment.[1]

The Eleventh Amendment provides sovereign immunity to states and state agencies that are sued by citizens in federal court. *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996). The Commonwealth's immunity exists as a matter of law unless that immunity is waived or abrogated by Congress. The Commonwealth has expressly invoked its Eleventh Amendment immunity under 42 Pa. Cons. Stat. § 8521(b). As a state agency, the DOC is entitled to immunity under the Eleventh Amendment. *See Durham v. Dep't of Corr.*, 173 F. App'x 154, 156 (3d Cir. 2006). Accordingly, the DOC is entitled to sovereign immunity against the plaintiff's § 1983 claims. Similarly, it is well settled that an action against an individual in his or her official capacity is no different than an action brought against the agency itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, the claims brought against Wetzel in his official capacity are barred by the Eleventh Amendment and should be dismissed.

---

[1] A court may raise the issue of sovereign immunity *sua sponte*. *See Durham v. Kelley*, 82 F.4th 217, 227 (3d Cir. 2023) (noting that the district court had reviewed the issue of sovereign immunity *sua sponte*).

However, we note that the DOC, as well as Wetzel in his official capacity, are not entitled to sovereign immunity on Spotz's ADA and RA claims.[2]  As the Third Circuit has previously held, Pennsylvania waived sovereign immunity under the RA on behalf of DOC by allocating federal funds to the DOC.  *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 170–71 (3d Cir. 2002); (Doc. 40 ¶ 13).  Similarly, Congress validly abrogated sovereign immunity with respect to Spotz's ADA claim.  When drafting the ADA, Congress "unequivocally expressed its intent to abrogate [sovereign] immunity…" pursuant to its enforcement power under § 5 of the Fourteenth Amendment.  *Durham*, 82 F.4th at 228 (quoting *Tennessee v. Lane*, 541 U.S. 509, 509–10 (2004)).  Abrogation is valid where the plaintiff "plead[s] a companion constitutional claim arising from the same facts as the ADA claim."  *Durham*, 82 F.4th at 228.  As explained below, in our view, Spotz has stated an Eighth Amendment claim.  That claim is premised on the same allegation as his ADA claim—

---

[2] However, we recommend that Spotz's ADA and RA claims against Wetzel in his individual capacity be dismissed because "[i]ndividual defendants are not liable under the ADA or Rehabilitation Act."  *Pinckney v. Mason*, No. CV 3:22-0751, 2023 WL 2652244, at *7 (M.D. Pa. Mar. 27, 2023), *appeal dismissed*, No. 23-1817, 2023 WL 7411534 (3d Cir. Aug. 28, 2023).

that DOC held him in solitary confinement despite knowing he had severe mental illnesses. (Doc. 40 ¶¶ 103-04, 120). Accordingly, Spotz's ADA and RA claims should proceed against the DOC and Wetzel in his official capacity.

### B. Spotz's Substantive Due Process Claim is Barred by the More-Specific-Provision Rule.

Spotz has also asserted a claim under the Fourteenth Amendment for violations of his substantive due process rights arising out of his prolonged solitary confinement. However, because this claim is substantively the same as his Eighth Amendment conditions of confinement claim, this claim is barred by the more-specific-provision rule. *See United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision ... the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). Accordingly, any substantive due process claim must be dismissed.

### C. We Cannot Conclude that Spotz has Failed to Exhaust his Administrative Remedies.

The defendants argue that the amended complaint should be dismissed under the Prison Litigation Reform Act ("PLRA") because

Spotz failed to exhaust his administrative remedies. (Doc. 55 at 7-13). In support of their argument, the defendants rely on a host of extrinsic exhibits, such as a declaration and Spotz's grievances. (*Id.*). Because the defendants have alternatively filed for summary judgment, we will consider these exhibits and analyze this claim under the summary judgment standard. *See Major v. Halligan*, No. 1:21-CV-00068-RAL, 2023 WL 6389038, at *5 (W.D. Pa. Sept. 29, 2023). After consideration, we cannot conclude as a matter of law that Spotz has failed to exhaust his administrative remedies.

Under the PLRA, prisoners are required to present their claims through a prison's administrative process prior to bringing claims in federal court. 42 U.S.C. § 1997e(a). This applies to any claim arising in the prison setting, regardless of the relief sought by the prisoner. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). The PLRA's exhaustion requirement is mandatory, provided that administrative remedies are available to the prisoner. *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000); 42 U.S.C. § 1997e(a). A failure to exhaust available administrative remedies bars an inmate from bringing

a suit in federal court.  *Ghana v. Holland*, 226 F.3d 175, 184 (3d Cir. 2000).

The PLRA requires "proper exhaustion" of administrative remedies, meaning that the inmate must comply with the procedural requirements of the prison's grievance system.  *Woodford v. Ngo*, 548 U.S. 81, 84, 90 (2006).  In the Pennsylvania DOC, inmates must follow the three-tiered grievance process set forth in DC-ADM 804.  *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004).  Thus, an inmate must begin by filing a grievance with the Facility Grievance Coordinator at the institution where the incident took place.  The grievance must contain a statement of facts giving rise to the grievance, identify individuals involved, state claims the inmate wishes to make regarding any violations of DOC policy or the law, and request the specific relief sought.  If the grievance is denied at initial review, the inmate may then appeal to the Facility Manager, *i.e.*, the Superintendent of the facility.  If the initial response is upheld, the inmate may file an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within 15 working days of the Facility Manager's decision.  *See* DC-ADM 804 (Doc. 55-3 at 4-23).

Though Spotz filed a host of grievances, only one of them—No. 667940—relates to the allegations in this case. (Doc. 55-9, Ex. 7). In that grievance, Spotz alleged that he was being held in perpetual solitary confinement in the CCU without adequate mental health care. (*Id.* at 5-7). According to Spotz, the kind of treatment he required was reserved for inmates with higher stability code ratings. (*Id.*). Spotz therefore sought monetary damages and requested that DOC either increase his stability code rating or provide him services typically reserved for inmates with higher ratings. (*Id.*). The DOC denied Spotz's grievance and Spotz filed multiple appeals, which were rejected. (*Id.*).

In his final appeal, Spotz argued, among other things, that the DOC was violating the Eighth Amendment by failing to treat his serious mental illnesses while holding him in solitary confinement. (Doc. 55-9 at 10-11). In support of that argument, he cited three cases from this circuit—*Shoats v. Horn*, 213 F.3d 140 (3d Cir. 2000), *Johnson v. Wetzel*, 209 F. Supp. 3d 766, 772 (M.D. Pa. 2016), and *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549 (3d Cir. 2017)[3]—all of which

---

[3] While the grievance only identifies these cases by their first names, in context, it is clear that Spotz is referring to these three cases.

discussed the growing consensus that solitary confinement causes serious mental health problems. (*Id.*). He further mentioned the United States DOJ's 2014 investigation of the DOC. (*Id.*). Spotz noted that he attempted suicide in February of 2017 and that the plaintiff in *Williams* committed suicide while being held in solitary confinement without mental health treatment. (*Id.*).

Though it is a close call, we cannot conclude at this time that Spotz failed to exhaust his administrative remedies. Here, Spotz's grievance and his amended complaint share a factual basis—that he was held in prolonged solitary confinement despite his serious mental health conditions. (Doc. 40 ¶¶ 14-20; Doc. 55-9). Spotz's grievance paperwork also referenced the Eighth Amendment and relevant caselaw discussing the substance of the claims in the amended complaint. Accordingly, in our view, Spotz "alert[ed] the prison to the nature of the wrong for which redress is sought." *Perez v. Reno*, No. 3:22-CV-01021, 2023 WL 6051258, at *2 (M.D. Pa. Sept. 15, 2023) (internal quotations and citations omitted). Moreover, "[a]s long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is not required by the PLRA." *Perez*, 2023 WL 6051258, at *3.

Because we find this to be a close call, and we are mindful of the Third Circuit's "strong policy in favor of deciding cases on the merits," *Hildebrand v. Allegheny Cnty.*, 923 F.3d 128, 137 (3d Cir. 2019), we recommend that the defendants' motion to dismiss on exhaustion grounds be denied.

### D. Spotz's Claims are not Barred by the Statute of Limitations.

The defendants next argue that Spotz's claims are untimely. (Doc. 55 at 13-23). In Pennsylvania, claims brough under § 1983, the ADA, and the RA are subject to a two-year statute of limitations. *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). However, the continuing violation doctrine is an equitable exception to this rule. *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir.1991).

In *Busanet v. Wetzel*, the District Court for the Eastern District of Pennsylvania applied the continuing violation doctrine to virtually identical allegations. *Busanet v. Wetzel*, No. 21-CV-4286, 2023 WL 5003573, at *6 (E.D. Pa. Aug. 4, 2023). There, the plaintiff—a death-sentenced prisoner with a known history of mental illness—alleged that he was held in solitary confinement between March of 1999 and December of 2019. *Id.* at *1-4. The plaintiff filed the action in September of 2021, asserting the same claims at issue in this case, and the defendants moved to dismiss those claims as untimely. *Id.* at *6. The court rejected that argument under the continuing violation doctrine because the defendants allegedly violated the plaintiff's rights until December of 2019, less than two years before the plaintiff filed suit. *Id.*

We find the reasoning in *Busanet* persuasive. Spotz alleges that that the DOC held him in solitary confinement between March of 1995 and December 3, 2019—the date the policy changed. (Doc. 40 ¶ 61). Therefore, we conclude that continuing violation doctrine applies and

19

Spotz's filing of this suit in October of 2021 was within the applicable two-year statute of limitations.[4]

### E. Wetzel is Entitled to Qualified Immunity against Spotz's Fourteenth Amendment claim, but not against Spotz's Eighth Amendment Claim.

Wetzel argues that he is entitled to qualified immunity on the Eighth and Fourteenth Amendment claims against him in his individual capacity. (Doc. 55 at 23-35). The doctrine of qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This doctrine "provides ample protection to all but the plainly incompetent or those who knowingly

---

[4] The defendants argue that even if the continuing violation doctrine applies, the statute of limitations would have expired in May of 2020 because the interim policy was implemented in the spring of 2018. (Doc. 55 at 20). However, Spotz alleges that he was held in solitary confinement until December of 2019, when the official policy took effect. Even if we were to consider extrinsic exhibits regarding the interim policy, we could not simply assume, contrary to Spotz's allegations, that the policy was correctly applied to him. We further note that in *Williams v. Wetzel*, the District Court for the Eastern District of Pennsylvania found a genuine issue of material fact where plaintiff testified that he was held in solitary confinement until December 2019 despite DOC's written policies. *Williams v. Wetzel*, No. 21-CV-1248, 2022 WL 2869316, at *8 (E.D. Pa. July 21, 2022).

violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). While generally a question of law to be decided at the earliest possible stage, "a genuine dispute of material fact on the issue of qualified immunity may preclude summary judgment." *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

Qualified immunity is an affirmative defense that must be established by the official seeking immunity. *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014) (citing *Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010)). To determine whether an official is entitled to qualified immunity, a court must determine (1) whether the official violated a constitutional right, and (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see Pearson,* 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first).

A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741

(2011)). Courts must not define the right "at a high level of generality."
*Id.* (quoting *Al-Kidd*, 563 U.S. at 742, 131 S. Ct. 2074). Rather, the
inquiry should focus on "whether the violative nature of particular
conduct is clearly established." *Id.* (quoting *Al-Kidd*, 563 U.S. at 742).
Ultimately, "[t]he relevant, dispositive inquiry in determining whether a
right is clearly established is whether it would be clear to a reasonable
officer that his conduct was unlawful in the situation he confronted."
*Saucier*, 533 U.S. at 202. The plaintiff bears the initial burden of
demonstrating that the constitutional right at issue was clearly
established at the time of the claimed violation. *See Davis v. Scherer*,
468 U.S. 183, 197 (1984); *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d
Cir. 1997).

To determine whether a right is clearly established, the court may
look to cases from the Supreme Court, controlling circuit precedent, or "a
robust consensus of cases of persuasive authority" from other circuit
courts. *Porter v. Pa. Dep't of Corrs.*, 974 F.3d 431, 449 (3d Cir. 2020)
(quoting *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d
136, 142 (3d Cir. 2017)). Unpublished cases cannot establish a right
because they do not constitute binding authority. *El v. City of Pittsburgh*,

975 F.3d 327, 340 (3d Cir. 2020).  However, in rare cases, the conduct may be clearly established from the obviously unlawful nature of the conduct "even though existing precedent does not address similar circumstances." *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (citing *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

After consideration, we conclude that Wetzel is entitled to qualified immunity against Spotz's due process claim, but that Spotz's Eighth Amendment claim against him should proceed.

### 1. <u>Due Process Claim</u>

In *Williams v. Pennsylvania Department of Corrections*, the Third Circuit held that "inmates on death row whose death sentences have been vacated have a due process right to avoid continued placement in solitary confinement ... [ ] absent ... meaningful protections." *Williams*, 848 F.3d at 576.  Subsequently, in *Porter v. Pennsylvania Department of Corrections*, the Third Circuit applied *Williams* to a prisoner who had been held in solitary confinement for 33 years without individualized review, even after his sentence had been vacated.  *Porter*, 974 F.3d at 437-40.  However, the Circuit expressly declined to decide "whether inmates who have not been granted resentencing hearings and vacatur

23

have a procedural due process interest in avoiding continued solitary confinement." *Id.* at 438.

Further, this court has noted that the Third Circuit has yet to hold that death-sentenced inmates challenging prolonged solitary confinement who have not been granted sentencing relief—such as Spotz—have a liberty interest in avoiding indefinite solitary confinement. *Lopez v. Wetzel*, No. 3:21-CV-1819, 2022 WL 17340629, at *7 (M.D. Pa. Nov. 30, 2022); *see also Busanet*, No. 21-CV-4286, 2023 WL 5003573, at *9. The plaintiff has not provided, nor has our research yielded, contrary authority from which we can conclude that such a right was clearly established. Accordingly, Wetzel is entitled to qualified immunity against the plaintiff's due process claim.

### 2. Eighth Amendment Claim

The Eighth Amendment protects inmates from "cruel and unusual punishment." U.S. Const. amend. XIII. Prison officials have a duty to provide inmates with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). To be liable for an Eighth

Amendment violation, prison officials must have "a sufficiently culpable state of mind," *Farmer*, 511 U.S. at 834, which, in the prison context, is one of " 'deliberate indifference' to inmate health and safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (citation omitted).

To plead a sufficiently serious deprivation, the plaintiff must allege that the defendants denied him the "'minimal civilized measure of life's necessities.'" *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). A plaintiff may plead such a deprivation by alleging that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 828). The Third Circuit has held that allegations establishing "that [a plaintiff] was kept in conditions of almost complete isolation for seven months by officials who knew him to be seriously mentally ill" adequately pleads a substantial risk of serious harm under the Eighth Amendment. *Clark*, 55 F.4th at 180.

Further, to plead the culpability element, a plaintiff must allege that "prison officials acted with deliberate indifference." *Clark*, 55 F.4th at 179. An official is deliberately indifferent where he knows of but disregards "'an excessive risk to inmate health and safety.'" *Id.* a (quoting

25

*Beers-Capitol*, 256 F.3d at 131).   In *Clark*, the plaintiff adequately pleaded deliberate indifference by alleging, among other things, that "he had been treated for schizophrenia and bipolar disorder at the prison for over ten years," that the American Correctional Association had recommended changes "to ensure the isolation would not exacerbate an inmate's mental illness[,]" and that prison officials disregarded their own procedures, "which require[d] seriously mentally ill inmates to be closely assessed and evaluated before being placed in solitary confinement." *Id.* at 174-80.   Subsequently, one court in this district found that the plaintiff adequately pleaded deliberate indifference by alleging that he was held in solitary confinement for 20 years even though the defendants knew based on psychological studies, case law, the 2014 DOJ report, and the 2017 ACLU letter that prolonged isolation was extremely harmful to people with preexisting mental illnesses. *Busanet*, No. 21-CV-4286, 2023 WL 5003573, at *4-6.

Here, we conclude that Spotz has adequately pleaded an Eighth Amendment violation by Wetzel.   The allegations in this case—that Spotz spent "almost all his waking hours" in his cell for approximately 25 years, (Doc. 40 ¶¶ 20 and 29)—are at least as serious as the allegations in

*Clark*—"that [the plaintiff] was kept in conditions of almost complete isolation for seven months…." *Clark*, 55 F.4th at 180.  Moreover, like the plaintiff in *Clark*, Spotz alleges that Wetzel knew of his mental health conditions because the DOC treated him for over a decade.  (Doc. 40 ¶¶ 14-19); *Clark*, 55 F.4th at 180.  Spotz also relies on the same allegations deemed sufficient in *Busanet*—that the defendants knew based on psychological studies, Third Circuit precedent, a 2014 DOJ finding, and a 2017 ACLU letter that solitary confinement was particularly dangerous for people with preexisting mental illnesses.  *(Id.* ¶¶ 71-96).  Finally, Spotz alleges that another court in this district has already found, after discovery, that "Wetzel 'knows well the risks inherent in prolonged isolation…[and has] stated he is familiar with the [scholarly literature] which sets forth at length the harmful effects of solitary confinement.'" (*Id.* ¶ 92) (quoting *Johnson*, 209 F. Supp. 3d at 779).  Though this determination is certainly not binding, it suggests that discovery in this case could plausibly yield the same result.  Accordingly, we believe Spotz has adequately pleaded both prongs of his Eighth Amendment claim.

We now turn to the defendants' primary argument—that, under Third Circuit precedent, they are entitled to qualified immunity on any

Eighth Amendment claim challenging conditions of confinement in the CCU. (Doc. 55 at 26). The defendants rely primarily on two Third Circuit cases—*Porter* and *Johnson*. In both cases, the plaintiff was held in solitary confinement on death row for over 20 years, even after their death sentences had been vacated. *Porter*, 974 F.3d at 437; *Johnson v. Pennsylvania Dep't of Corr.*, 846 F. App'x 123, 125-26 (3d Cir. 2021). Though both plaintiffs claimed to have suffered irreversible damage to their mental health, neither plaintiff had a known history of mental illness. *Porter*, 974 F.3d at 450; *Johnson*, 846 F. App'x at 125-26. In both cases, the Third Circuit granted qualified immunity on the plaintiff's Eighth Amendment claims. *Porter*, 974 F.3d at 450; *Johnson*, 846 F. App'x at 129. Notably, in *Porter*, the Circuit reasoned that "[c]ases that challenge interpretation of death row policy and conditions on death row are distinct from cases brought by inmates in general population subject to solitary confinement." *Porter*, 974 F.3d at 450.

Subsequently, in *Clark*, the Third Circuit addressed a more specific right than the one at issue in *Porter* and *Johnson*. As discussed above, the plaintiff, who had not been sentenced to death, alleged that he was held in solitary confinement for seven months even though he had a

28

known prior history of mental illness. *Clark*, 55 F.4th at 182. The Court of Appeals denied qualified immunity on the plaintiff's Eighth Amendment claim, holding that "the right of a prisoner known to be seriously mentally ill to not be placed in solitary confinement for an extended period of time by prison officials who were aware of, but disregarded, the risk of lasting harm posed by such conditions" was clearly established at least as of 2016—the year the plaintiff entered solitary confinement. *Id.* at 182.

The defendants argue that *Porter* and *Johnson* control because like the plaintiffs in those cases and unlike the plaintiff in *Clark*, Spotz is serving an active death sentence. (Doc. 55 at 29). We disagree. At the outset, we note that the court in *Busanet* rejected this exact argument, reasoning that "[t]he specific sentence that the individual is serving does not play a role in the Eighth Amendment inquiry...." *Busanet*, No. 21-CV-4286, 2023 WL 5003573, at *12.

Further, when framing the right at issue in *Clark*, the Third Circuit did not mention the plaintiff's sentence. *Clark*, 55 F.4th at 182. This is particularly telling because, as explained above, the Third Circuit expressly considered the sentence at issue when framing analogous

rights under the Fourteenth Amendment's Due Process Clause. *See e.g.*
*Williams*, 848 F.3d at 576 (holding that "inmates on death row whose
death sentences have been vacated have a due process right to avoid
continued placement in solitary confinement ... [ ] absent ... meaningful
protections."). Additionally, *Clark* premised its holding on cases that
only considered the inmate's health, not his sentence, and reiterated that
"[i]n assessing the conditions of segregated housing units, '[t]he
touchstone is the health of the inmate.'" *Clark*, 55 F.4th at 183-84.
Therefore, we read *Clark* as applying to all prisoners with known mental
illnesses, even those serving active death sentences.

The defendants also argue that *Johnson* and *Porter* control because
those cases specifically addressed conditions in the CCU. (Doc. 55 at 28).
However, it is irrelevant that *Porter* and *Johnson* addressed the
conditions in the CCU because the CCU is not relevantly different from
the Secure Housing Unit in *Clark*. *Clark*, 55 F.4th at 173. In fact, both
units allegedly imposed the same unconstitutional condition—protracted
solitary confinement despite the plaintiffs' known mental illnesses. *Id.*;
(Doc. 40 ¶¶ 14-20).

Finally, the defendants argue that we should follow *Williams v. Wetzel*, a case where the District Court for the Eastern District of Pennsylvania granted qualified immunity on a similar Eighth Amendment claim. (Doc. 55 at 31-32 (citing *Williams*, No. 21-CV-1248, 2022 WL 2869316)). We disagree. In *Williams*, the court tersely reasoned that it was bound by *Porter*, which in its view, "held that Eighth Amendment rights with respect to conditions of solitary confinement on death row [we]re not "'clearly established.'" *Williams*, No. 21- CV-1248, 2022 WL 2869316, at *8 (E.D. Pa. July 21, 2022). However, this broad reading of *Porter* contradicts *Clark*, which was decided several months after *Williams* and is binding. *Clark*, 55 F.4th at 182-84. Nothing in *Clark* suggests that the DOC can hold an inmate with a known history of mental illness in prolonged solitary confinement merely because he has been sentenced to death. *Id.* at 183. In fact, *Clark's* reasoning suggests the opposite conclusion. *Id.* (explaining that "[e]ven assuming Clark was initially placed in the SHU for a justified penological purpose, the 'pronounced worsening' of his mental illness symptoms resulting from months in isolation was wholly pointless and unjustified."). Because we

are bound by *Clark*, we find the defendants' reliance on *Williams* unavailing.

Having determined that the right articulated in *Clark* applies here, we must now decide when that right became clearly established. While *Clark* held that the right was clearly established as of at least January 22, 2016, the *Busanet* court held that it was clearly established as of at least February of 2014—the year that DOJ issued its findings letter. *Id.* at 182; *Busanet*, 2023 WL 5003573, at \*13. Though *Busanet* is consistent with *Clark*, we are reluctant to overstretch *Clark's* holding. Therefore, in our view, Spotz may only recover under the Eighth Amendment for the period between January 22, 2016, and December of 2019—the month when Spotz was released from solitary confinement.

Accordingly, we conclude that Wetzel is not entitled to qualified immunity against the plaintiff's Eighth Amendment claim, and the defendants' motion to dismiss this claim should be denied.

## V.   Recommendation

For the foregoing reasons, IT IS RECOMMENDED THAT the defendants' motion to dismiss or, in the alternative, for summary

judgment (Doc. 54) be GRANTED IN PART and DENIED IN PART as follows:

1. The motion should be GRANTED with respect to the plaintiff's substantive and procedural due process claims, the Eighth Amendment claims against the DOC and Wetzel in his official capacity, and the ADA and RA claims against Wetzel in his individual capacity.

2. The motion should be DENIED with respect to the ADA and RA claims against the DOC and Wetzel in his official capacity, as well as the plaintiff's Eighth Amendment claim against Wetzel in his individual capacity.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of February 2024.

<div style="margin-left: 40%;">

*s/ Daryl F. Bloom*
Daryl F. Bloom
United States Magistrate Judge

</div>